# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRENE GOMEZ,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>　　　　　Defendant. | CASE NO. 06cv2051 BTM (NLS)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION TO DISMISS COMPLAINT, AND REMANDING CASE** |

## I. INTRODUCTION

Plaintiff Irene Gomez alleges that she became disabled on November 2, 2003, due to fibromyalgia and osteoarthritis. (Tr. 17-19.) Plaintiff's application for Disability Insurance Benefits under the Social Security Act ("Act") was denied initially and on reconsideration. (Tr. 17.) Plaintiff filed a request for hearing and testified at the hearing on August 17, 2005. (Id.) The Administrative Law Judge ("ALJ") denied benefits in a decision dated September 21, 2005, concluding that Plaintiff was not disabled within the meaning of the Act. (Tr. 22.) The decision of the Social Security Administration became final when the Appeals Council denied Plaintiff's request for review. (Tr. 4-6.) Plaintiff then commenced this action, seeking judicial review under 42 U.S.C. § 405(g).

Plaintiff has filed a motion for summary judgment. Defendant has filed a cross-motion for summary judgment, and a motion to dismiss the complaint. For the reasons discussed below, Plaintiff's motion for summary judgment is **GRANTED**, Defendant's cross-motion and motion are **DENIED**, and the case is remanded to the ALJ for a determination of the onset date of Plaintiff's disability and a calculation of benefits.

## II.  FACTUAL BACKGROUND

Plaintiff was born on June 11, 1978. (Tr. 57.) Plaintiff was in a motor vehicle accident in 1998, suffering whiplash injuries, and has since complained of progressive body aches and chronic fatigue syndrome. (Tr. 19.) Plaintiff was diagnosed with fibromyalgia in 2003 and alleges continuing disability based on fibromyalgia and osteoarthritis.[1] (Id.) Plaintiff previously worked as a kitchen helper, teacher's aide, retail salesperson, telephone dispatcher, office assistant, and a customer service representative. (Tr. 18.) Plaintiff has sixteen years of formal education. (Id.) Plaintiff has not engaged in any substantial gainful activity since her alleged disability onset date of November 2, 2003. (Id.)

On June 20, 2004, Plaintiff visited Henry Lin, M.D. for a consultative internal medicine evaluation. (Tr. 122-25.) Dr. Lin observed that Plaintiff was able to get in and out of a chair without difficulty, and that Plaintiff was positive in 18/18 fibromyalgia trigger points, which were tender to palpatation. (Tr. 123.) Dr. Lin opined that Plaintiff was able to lift or carry 100 pounds occasionally and 50 pounds frequently, stand or walk for six hours during an eight-hour workday, and sit for six hours during an eight-hour workday. (Tr. 125.)

---

[1] Fibromyalgia is a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue. Benecke v. Barnhart, 379 F.3d 589, 589 (9th Cir. 2004). The symptoms of fibromyalgia are "'pain all over,' fatigue, disturbed sleep, stiffness, and – the only symptom that discriminates between it and other diseases of a rheumatic character – multiple tender spots, more precisely [eighteen] fixed locations on the body." Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996). Claimants typically must have at least eleven positive trigger points to be diagnosed with fibromyalgia. Id.

In August of 2004, Plaintiff sought treatment for joint pain from Jennifer Poast, D.O. and Cynthia Rubio, M.D. at the San Ysidro Health Center. (Tr. 130-32.) Plaintiff also received care from Dr. Poast in 2005. (Tr. 165, 172.)

Plaintiff was referred to Steven H. Greenwald, M.D., and first visited him on August 3, 2004, for numbness in her hands and feet. (Tr. 140, 201.) Dr. Greenwald recorded that Plaintiff had difficulty transferring from standing to the supine position, and recommended aquatic therapy. (Tr. 141.)

In an appeal filed on September 13, 2004, Plaintiff stated that her condition was worsening as she had "less endurance, more severe pain," and she experienced numbness in her arms and hands more often than she had in the past. (Tr. 83.) She stated that she sometimes needed help caring for her personal needs, including help shaving or drying herself, that she had difficulty brushing her hair, and that others usually cooked or did laundry for her when her hands became "numb or crampy." (Tr. 87.) She also reported that her mother accompanied her throughout the day and took care of Plaintiff's daughter. (Id.)

On May 17, 2005, Plaintiff presented to Dr. Greenwald with complaints of pain in her neck, elbow, wrist, low back, hips, knees, and ankles. (Tr. 155-56.) He noted that she appeared in "slight distress" upon movements onto the examination table, "slight pain" existed at extension during cervical spine range of motion flexion to sternum and upon foraminal compression, and "moderate pain" existed at extreme of abduction of her shoulder. (Tr. 157.) Subjective impressions noted by Dr. Greenwald included morning stiffness in Plaintiff's hands, neck, wrists, knees, and feet. (Tr. 158.) Objective impressions included warm fingers, positive rheumatoid factor, anemia, and limited range of motion of the shoulder and lumbar spine. (Id.) Based on subjective and objective factors, Dr. Greenwald declared that Plaintiff was "totally disabled at this time and is unable to compete in the workplace, unable to stand, walk or sit for more than [ten] minutes at a time." (Tr. 158.) On May 18, 2005, Dr. Greenwald opined that Plaintiff could not sit, stand, or walk for more than ten minutes at a time, could not

complete a normal workday or workweek without interruptions from physical symptoms, and would miss twenty days per month if she worked. (Tr. 149.)

During the hearing held before the ALJ on August 17, 2005, Plaintiff contended that her fibromyalgia symptoms – including trigger points and tenderness, joint pain, and fatigue – prevented her from returning to her past relevant work. (Tr. 198.) Plaintiff testified that she suffered severe pain in her neck, lower back, hips, shoulders, and wrists on a daily basis. (Tr. 203.) She also stated that daily headaches affected her concentration and vision. (Tr. 206.) Plaintiff further testified:

> [My arms] get tired very quickly, a matter of minutes. I could be walking for a little bit, and my hips lock, and it's hard to keep going. I sometimes have to drag my leg. And when I sit down and try to get up again, my back locks. It's – my hands get stiff during the day. It's hard to pick up something or open a jar or just do the regular activities.

(Id.) At the time of the hearing, Plaintiff lived with her aunt who helped care for her. (Tr. 198, 206-07.) Her mother lived nearby and helped Plaintiff in her daily activities while Plaintiff's aunt was at work. (Id.) According to Plaintiff, physical activity in a typical day involved the following:

> I stay at home. My daughter's with me as well as my mom. I, I don't cook. I don't do chores. I have to rest during the day. I spend time in the living room. I sit down with my daughter. Sometimes we go outside, and I sit down. And my mom usually watches her and takes care of her, makes lunch for her and gets her her bath. I'm just present.

(Tr. 202.)

### III. STANDARD OF REVIEW

The Commissioner's denial of benefits may be set aside if it is not supported by substantial evidence or is based on legal error. Green v. Heckler, 803 F.2d 528, 529 (9th Cir. 1986). Substantial evidence is more than a scintilla, but less than a preponderance. Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports the decision, a district court must review the administrative record as a whole, weighing both the

evidence that supports and the evidence that detracts from the decision. Id. The court must uphold the decision if the evidence can reasonably support either affirming or reversing the ALJ's conclusion. Id. at 720-21.

To qualify for disability benefits, the claimant must show that a medically determinable physical or mental impairment prevents her from engaging in substantial gainful activity, and the impairment is expected to result in death or has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Reddick, 157 F.3d at 721. The claimant carries the initial burden of proving disability. 42 U.S.C. § 423(d)(5); Reddick, 157 F.3d at 721. If the claimant establishes that she is unable to do her prior work, the burden shifts to the Secretary to show that the claimant can perform other substantial gainful work that exists in the national economy. Reddick, 157 F.3d at 721.

The determination of whether a claimant is disabled is governed by a five-step process as follows: (1) Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, the evaluation proceeds to step two. (2) Does the claimant have a "severe" impairment? If so, the evaluation proceeds to step three. If not, the claimant is not disabled. (3) Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, the evaluation proceeds to step four. (4) Is the claimant capable of performing past work? If so, the claimant is not disabled. If not, the evaluation proceeds to step five. (5) Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled. See 20 C.F.R. § 404.1520; see also Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

## IV. **DISCUSSION**

The ALJ found that Plaintiff has performed no substantial gainful activity since November 2, 2003, and that the impairments of fibromyalgia and osteoarthritis are

"severe" under the Act but do not meet or equal an impairment in 20 C.F.R. Pt. 404, Subpt P, App. 1. (Tr. 21.) The ALJ further found that Plaintiff has the capability to lift and carry less than ten pounds, to stand and/or walk six hours in an eight-hour workday, and to sit for six hours in an eight-hour workday, with occasional postural limitations. (Tr. 21.) The ALJ determined that Plaintiff retains the functional capacity for sedentary level work activity and can perform the job duties of her past relevant work as an office assistant. (Tr. 21-22.) Therefore, the ALJ concluded that Plaintiff is not disabled.

Plaintiff challenges the ALJ's decision on several grounds. According to Plaintiff, the ALJ failed to accord controlling weight to Dr. Greenwald's opinion of Plaintiff's limitations and did not provide any reasons for rejecting the opinion. Plaintiff also contends that the ALJ provided legally insufficient reasons for discrediting her allegations of pain. In addition, Plaintiff argues that the ALJ failed to ascertain the duties of her past relevant work. In reviewing the record as a whole, the Court agrees with Plaintiff that the ALJ's decision is not supported by substantial evidence.

### A. Treating Physician's Opinion

Plaintiff argues that the ALJ failed to provide valid reasons for rejecting Dr. Greenwald's assessment of Plaintiff's limitations. The Court agrees.[2]

The ALJ must give primary weight to the views of treating physicians, "absent specific and legitimate reasons for rejecting them that are supported by substantial evidence." Benecke, 379 F.3d at 592 n.1. Specific and legitimate reasons, supported by substantial evidence, are required of the ALJ even if the treating physician's opinion is contradicted by the opinion of another doctor. Lester, 81 F.3d at 830-31.

Dr. Greenwald had been Plaintiff's treating physician for approximately one year at the time of the ALJ proceeding. (Tr. 204.) In his May 18, 2005 report, Dr. Greenwald

---

[2] Plaintiff concedes that the ALJ did not err in rejecting Dr. Greenwald's May 17, 2005, statements that Plaintiff was "totally disabled and unable to compete in the workplace" because the determination of these issues is reserved to the ALJ. (Pl.'s Mem. at 5-6.)

6

1  concluded that Plaintiff would be unable to sustain the capacity to perform work at a
2  consistent pace for eight hours, to work without more than one five-minute break per
3  hour, or to complete a normal workday or workweek without interruptions from physical
4  symptoms.  (Tr. 149.)  He also stated that Plaintiff would miss twenty days per month
5  due to her medical impairments.  (Id.)  The ALJ did not review these findings and
6  offered no reasons for ignoring or rejecting the assessment.  In addition, the ALJ failed
7  to provide reasons for rejecting Dr. Greenwald's opinion that Plaintiff could not stand,
8  walk, or sit for more than ten minutes at a time.  (Tr. 149.)

9  It appears that the ALJ relied upon Dr. Lin's June 20, 2004 report to find that
10 Plaintiff could stand and/or walk six hours in an eight-hour workday and could sit six
11 hours in an eight-hour workday, with postural limitations.  However, Dr. Lin examined
12 Plaintiff almost eleven months prior to Dr. Greenwald.  (Tr. 122-25.)  Furthermore, Dr.
13 Lin, in contrast to Dr. Greenwald, did not review all of Plaintiff's medical records, and did
14 not have the benefit of knowing about Plaintiff's positive rheumatoid factor tests on
15 January 23, 2003 (Tr. 178), August 6, 2004 (Tr. 135), August 17, 2004 (Tr. 159), May
16 12, 2005 (Tr. 166), and May 17, 2005 (Tr. 158).

17 Because the ALJ erred in failing to provide specific and legitimate reasons for
18 rejecting the opinion of Plaintiff's treating physician, Dr. Greenwald's assessment of
19 Plaintiff's limitations is entitled controlling weight.  See, e.g., Embrey v. Bowen, 849 F.2d
20 418, 422 (9th Cir. 1988) (finding error because ALJ merely stated that objective factors
21 pointed toward a conclusion adverse to treating physicians' opinions that claimant was
22 permanently disabled, unemployable, and had limited capacities to stand, lift, carry, or
23 walk for more than thirty minutes).
24 ///
25 ///
26 ///
27 ///
28 ///

**B. Plaintiff's Credibility**

Plaintiff contends that the ALJ's reasons for discrediting her allegations of pain were legally insufficient. The Court agrees.

Once the claimant produces evidence of an underlying impairment, the ALJ may not discredit the testimony as to the severity of the pain merely because it is unsupported by objective medical evidence. Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991) (en banc). The ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony unless there is affirmative evidence that the claimant is malingering. Swenson, 876 F.2d at 687. The ALJ also must identify what testimony is not credible and what evidence undermines the claimant's complaints. Lester, 81 F.3d at 834.

The ALJ provided five reasons for rejecting Plaintiff's testimony as to the severity of her alleged pain. First, the ALJ noted that Plaintiff testified that her daily routine included staying home with her mother and daughter, occasionally driving, and "sitting down a lot." (Tr. 20.) The ALJ also remarked that "she only takes Tylenol for her pain." (Id.) Second, according to the ALJ, Dr. Greenwald's statements that Plaintiff appeared in "slight distress," that there was "slight pain" at extension during cervical spine range of motion flexion to sternum, and that there was "slight pain" upon foraminal compression were inconsistent with the disabling pain she alleged. (Id.) Third, the ALJ contended that the record "is absent [of] any ongoing, routine treatment" for Plaintiff's pain or fatigue. (Id.) Fourth, the ALJ noted Dr. Lin's opinion that Plaintiff could lift or carry 100 pounds occasionally and 50 pounds frequently, and could also stand or walk for six hours during an eight-hour workday, and sit for six hours during an eight-hour workday. (Id.) Fifth, the ALJ did not find that the objective evidence in Plaintiff's medical record established impairments likely to produce disabling pain or other limitations for at least a consecutive twelve month period. (Id.)

As to the ALJ's first reason, it is unclear why the ALJ believed that Plaintiff's home activities contradicted her pain testimony. See Fair v. Bowen, 885 F.2d 597, 603

(9th Cir. 1989) (stating that claimants need not be "utterly incapacitated" to qualify for disability benefits, and that home activities are often not easily transferable to a work environment where opportunities to rest are impossible). Plaintiff's activities of occasional driving and staying home with her daughter and mother are not inconsistent with her pain testimony. Plaintiff's mother cared for Plaintiff and her daughter each day. When Plaintiff stated that she sat down a lot, she did not state that she was continuously sitting. Furthermore, the record indicates that Plaintiff was taking only Tylenol at the time of the hearing because she was pregnant. (Tr. 198, 202.) Before her pregnancy, Plaintiff took many prescription medicines for her pain, including Celebrex, Valium, Elavil, and Prednisone, among others. (Tr. 201-02.)

Second, Dr. Greenwald's use of the word "slight" to describe some of Plaintiff's pain upon examination did not warrant rejecting Plaintiff's credibility. (Tr. 20.) The Court highlights that these statements are from the same examination that led Dr. Greenwald to declare that Plaintiff was "totally disabled," an opinion the doctor formed after reviewing Plaintiff's past medical records and positive rheumatoid factor results. (Tr. 155-58.) Further, Dr. Greenwald noted that she had "moderate pain" at extreme abduction of her shoulder and "moderate pain" in her lumbar spine. (Tr. 19, 156.) Most importantly, Plaintiff stated that the pain "comes and goes," and, therefore, the Court would not expect her to suffer constant, extreme pain. (Tr. 82.) Dr. Greenwald's physical examination was only a snapshot of Plaintiff's pain at that moment in time.

Third, the Court disagrees that the record lacks evidence of ongoing, routine treatment for Plaintiff's pain. Plaintiff was diagnosed with fibromyalgia in 2003, sought treatment from Jennifer Poast, D.O. and Cynthia Rubio, M.D. at the San Ysidro Health Center in 2004, and was referred to Dr. Greenwald. (Tr. 132, 200-01.) In fact, prior to the hearing Plaintiff was examined or treated for symptoms of fibromyalgia and pain on January 13, 2003 (Tr. 119), August 17, 2004 (Tr. 131), August 19, 2004 (Tr. 130), November 4, 2004 (Tr. 182), November 18, 2004 (Tr. 181), December 2, 2004 (Tr. 179), February 24, 2005 (Tr. 172), March 24, 2005 (Tr. 169), May 12, 2005 (Tr. 167), and

May 20, 2005 (Tr. 165). Plaintiff also testified that she had been seeing Dr. Greenwald for one year, and that she was waiting to see a neurologist and a rheumatologist. (Tr. 204.) This evidence clearly shows that Plaintiff sought and received routine treatment up to the hearing date. Additionally, Plaintiff continued receiving treatment for her symptoms, including on October 6, 2005 (Tr. 186), November 16, 2005 (Tr. 187), March 3, 2006 (Tr. 188), April 3, 2006 (Tr. 189), April 17, 2006 (Tr. 192), May 18, 2006 (Tr. 193), and June 19, 2006 (Tr. 194). Notably, the rheumatologist that Plaintiff visited on June 29, 2006, confirmed the fibromyalgia diagnosis and also diagnosed Plaintiff with early rheumatoid arthritis and left shoulder tendinitis. (Tr. 183.)

Fourth, the ALJ discounted Plaintiff's credibility based on Dr. Lin's opinion that Plaintiff could lift or carry 100 pounds occasionally and 50 pounds frequently, and could stand or walk for six hours during an eight-hour workday, and sit for six hours during an eight-hour workday. However, the ALJ apparently discounted Dr. Lin's medical opinion because he found that Plaintiff's physical capacities were limited to lifting and carrying less than ten pounds and that Plaintiff had occasional postural limitations. Given the ALJ's refusal to wholly credit Dr. Lin's opinions, the fact that Plaintiff alleges limitations that are more severe than those found by Dr. Lin does not constitute a convincing reason for concluding that Plaintiff is not credible. In addition, as discussed above, Dr. Lin did not review all of Plaintiff's medical records. Furthermore, the record indicates that Plaintiff's condition worsened after Dr. Lin's examination.[3]

Finally, the ALJ erred in relying on the lack of objective evidence establishing an impairment likely to produce disabling pain or limitations for a consecutive twelve-month period. The ALJ could not properly discredit Plaintiff's pain testimony based on a lack of objective medical evidence because Plaintiff produced evidence of an underlying

---

[3] In July and December 2004, two state agency physicians, Stephen C. Swan, M.D., and Thu N. Do, M.D., reviewed Plaintiff's medical records and concurred with Dr. Lin's assessment. However, the ALJ stated that he was giving their opinions "less weight than they are normally afforded" because Plaintiff was "more limited than originally thought." (Tr. 20.)

10

impairment. See Bunnell, 947 F.2d at 343. Furthermore, objective evidence is essentially impossible to obtain in fibromyalgia cases. See Green-Younger v. Barnhart, 335 F.3d 99, 108 (2d. Cir. 2003) (stating that the ALJ "effectively required 'objective' evidence for a disease [fibromyalgia] that eludes such measurement"); see also Sarchet, 78 F.3d at 306 (noting that symptoms of fibromyalgia are entirely subjective, and no laboratory tests can detect its presence or severity). Plaintiff also tested positive in 18/18 fibromyalgia trigger points, which is one of the few objective tests for fibromyalgia symptoms. (Tr. 19.) The ALJ failed to discuss other objective evidence noted by Dr. Greenwald, such as Plaintiff's anemia and her warm fingers. (Tr. 158.) The Court also notes that Plaintiff had suffered from symptoms for over one year at the time of the hearing, and testified that her symptoms had not improved during that period despite trying various prescription medication. (Tr. 202.)

Because the ALJ did not support his conclusions as to Plaintiff's lack of credibility with clear and convincing reasons, and no experts or witnesses suggested that Plaintiff was malingering, the Court finds that the ALJ erred in discounting Plaintiff's testimony as to the severity of her pain.

**C. Entitlement to Benefits**

Remand for further administrative proceedings is appropriate where enhancement of the record would be useful. Benecke, 379 F.3d at 593. On the other hand, the district court should remand for an immediate award of benefits where the record has been fully developed and further administrative proceedings would serve no useful purpose. Id. Specifically, the court should credit evidence rejected by the ALJ as true and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) there are no outstanding issues that must be resolved before the disability determination can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000) (citing Smolen

11

v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996)).

In this case, the ALJ failed to provide legally sufficient reasons for rejecting Dr. Greenwald's assessment of Plaintiff's limitations and for rejecting Plaintiff's pain testimony. Crediting Dr. Greenwald's opinion and Plaintiff's testimony, Plaintiff does not have the residual capacity to perform her past work or any other substantial gainful work that exists in the national economy.

However, there is a question as to whether Plaintiff's disability commenced on November 2, 2003, the alleged onset date. The evidence in the record indicates that Plaintiff's condition worsened over time. (Tr. 83, 140.) Plaintiff stopped working on October 31, 2003 because she was laid off, not because she was unable to work any longer. Although Plaintiff testified that prior to being laid off she had been working less than eight hours per day and her duties had changed, it is unclear exactly what Plaintiff's limitations were at that time. (Tr. 199-200.) It is also unclear when her condition reached the severity reflected in Dr. Greenwald's opinion and her testimony at the hearing.

Therefore, the Court remands for a determination of the onset date of Plaintiff's disability and a calculation of benefits.[4]

///
///
///
///
///
///
///
///

---

[4] Plaintiff is correct that the ALJ is required to, and did not, "investigate fully the demands of the applicant's past work and compare them to the applicant's residual mental and physical capabilities." Sivilay v. Apfel, 143 F.3d 1298, 1299 (9th Cir. 1998). The Court need not reach this issue, however, because the Court finds that Plaintiff's residual functional capacity precludes any substantial gainful employment in the national economy.

## V. <u>CONCLUSION</u>

For the reasons discussed above, Plaintiff's motion for summary judgment is **GRANTED** and Defendant's cross-motion for summary judgment and motion to dismiss the Complaint are **DENIED**. The Court **REMANDS** the case for further findings regarding the onset of disability and the calculation of benefits.

**IT IS SO ORDERED.**

DATED: September 10, 2007

*Barry Ted Moskowitz*

Honorable Barry Ted Moskowitz
United States District Judge